UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JARON HARRIS, | ) |  |  |
|---|---|---|---|
| Plaintiff, | ) ) ) |  |  |
| v. | ) ) | No.: | 3:18-cv-00120 REEVES/GUYTON |
| SGT. FORRESTER, ET AL., | ) ) |  |  |
| Defendants. | ) |  |  |

**MEMORANDUM OPINION**

Defendants Sgt. Forrester, Troy Dollar, Craig Murwin, J. McCracken, and Michael Moody ("Defendants") have filed a motion for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Doc. 36]. Plaintiff has failed to respond to the motion, and the deadline to do so has passed. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants[1], and this action should be **DISMISSED**.

**I.   PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that on August 31, 2017, Sgt. Forrester, Cpl. Dollar, and Correctional Officer Murwin, along with other correctional officers, entered Plaintiff's cell to conduct a search [Doc. 1 p. 6]. Plaintiff states that the officers used abusive, sexually threatening language to him in directing him to remove his clothing, "spread," and show the officers his rectum [*Id.*]. Plaintiff complied, but when directed by Cpl. Dollar to turn around slowly and repeat the move, he refused [*Id.*]. Plaintiff advised the officers that he felt "intimidated by the unprofessional and sexually

---

[1] The Court notes that Defendant Mrs. Dixon has not appeared in this action [Doc. 11]. Nonetheless, for the reasons set forth, *infra*, the Court finds that Plaintiff's claims are without merit, and that Mrs. Dixon is likewise entitled to dismissal.

aggressive remarks," so he placed his hands in the air, refused further search, and requested to be placed in a dry cell[2] [*Id*.]. Plaintiff contends that Sgt. Forrester told Plaintiff "to give them what he had or he would go inside" Plaintiff and get it [*Id*.]. Plaintiff again advised that he was refusing the search and requested to be placed in a dry cell [*Id*.].

Thereafter, Plaintiff asserts, Sgt. Forrester instructed Cpt. Dollar and other correctional officers to restrain Plaintiff face-down on the bed [*Id*. at 7]. Once restrained, Plaintiff's boxer briefs were ripped off, and he "felt a[n] object penetrate [his] anal cavity" [*Id*.]. Sgt. Forrester told Plaintiff to "scream all you want, we gave you a chance to do things the easy way, but you wanted it the hard way" [*Id*.].

Afterwards, Plaintiff contends, he attempted to report the incident to the Prison Rape Eliminate Act ("PREA") hotline, but by direct order from Counselor Moody, Correctional Officer Parks denied Plaintiff's request [*Id*.]. Several hours later, Plaintiff was escorted to the medical center, where he assumed he would be examined and provided the opportunity to report the officers' misconduct to PREA [*Id*.]. Instead, he claims, he was advised by Sgt. McCracken and Counselor Mrs. Dixon that they would be acting on behalf of PREA, and that PREA would "not accept or engage this issue" [*Id*. at 7-8]. Plaintiff requested to see a medical examiner and a PREA representative but was denied both requests [*Id*. at 8].

## II. SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean*

---

[2] A "dry cell" is a cell without plumbing.

*v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (internal quotation marks omitted).

The moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). In order to successfully oppose a motion for summary judgment, a party "'must set forth specific facts showing that there is a genuine issue for trial'" and "'may not rest upon the mere allegations or denials of his pleading.'" *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded, however. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden. *Id*. In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id*. at 410. If the court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id*. (alteration omitted).

## III. SUMMARY JUDGMENT EVIDENCE

On August 31, 2017, officers at the Northeast Correctional Complex ("NCCX") conducted a search of the Security Management Unit ("SMU") where Plaintiff was housed [Doc. 37-4 ¶ 3; Doc. 37-3 ¶ 3]. Plaintiff's cell was on a list of "hot cells," so his was one of the first to be searched [Doc. 37-4 ¶ 5]. When officers Dollar and Murwin entered his cell and requested that he remove his clothing for a strip search, Plaintiff refused [*Id.* at ¶ 7, 8]. Forrester, who was overseeing the operation, was summoned for assistance, and after Plaintiff refused his orders to remove his clothing, Forrester gave Plaintiff the option of removing his clothing or being placed in a dry cell [*Id.* at ¶ 8, 9]. Plaintiff removed his boxer shorts to squat and cough, at which time officers observed contraband partially concealed in his buttocks [*Id.* at ¶ 11; Doc. 37-2 ¶ 8]. Plaintiff was asked to squat and cough again, and when he coughed, a package of what was determined to be marijuana and Suboxone, fell to the floor [Doc. 37-4 ¶ 13; Doc. 37-1 p. 5]. Forrester picked up the package and turned it over to another officer so that it could be logged into evidence [Doc. 37-4 ¶ 14]. When the search of the cell was completed, Plaintiff returned to his cell [Doc. 37-3 ¶ 11; Doc. 37-8 ¶ 5].

After the search of Plaintiff's cell was complete and he was returned to his cell, he motioned for Officer Parks to come to his cell door and informed Parks that he wanted to make a PREA complaint [Doc. 37-8 ¶ 5, 6]. Pursuant to PREA protocol, Parks informed his supervisor, Corporal Rick Arnold, of Plaintiff's request [*Id.* at ¶ 9]. The next step in the PREA protocol would have been for Corporal Arnold to report the complaint to the shift officer in charge, who would in turn notify the PREA coordinator on shift [*Id.* at ¶ 10]. On August 31, 2017, the PREA coordinator was Angel Dixon [Doc. 37-7 ¶ 3; Doc. 37-5 ¶ 6]. Dixon did, in fact, receive Plaintiff's PREA complaint, as she and McCracken conducted a PREA interview, prepared a PREA report, and ensured that Plaintiff was evaluated by a sexual assault nurse [Doc. 37-5 ¶ 9-14]. The PREA

4

complaint was lodged at 8:10 a.m., and the investigation and PREA process was completed by 2:17 p.m. on August 31, 2017 [*See, e.g.*, Doc. 37-1 p. 13-15].

The PREA report concluded:

> After interviewing Cpl. Dollar, Officer Murwin and Sergeant Forrester and watching video surveillance of the area there is no evidence that suggest that inmate Harris was violated in anyway and that standard security protocol was followed by staff during the time of this incident. Inmate was taken to medical just for precautionary reasons and assessed which resulted in documentation of no injuries or trauma of any kind observed. It is believed after speaking with inmate Harris that he claimed PREA as a retaliation to him being caught with contraband which would result in him being phased back in the SMU program. Due to the information gathered this allegation will be Unfounded.

[Doc. 37-1 p. 5-6].

## IV.   LAW & ANALYSIS

### A.   Official-Capacity Claims

A suit against a defendant in his or her official capacity is treated as an action against the governmental entity the officer represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992). In an action against an officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Therefore, Plaintiff's claims against Defendants in their official capacities as employees of the Tennessee Department of Corrections are actually asserted against the State of Tennessee.

Under the Eleventh Amendment to the United States Constitution, a State is immune from actions for damages unless its immunity has been abrogated by Congress or expressly waived by the State. U.S. Const. Amend XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Quern v. Jordan*, 440 U.S. 332, 320–45 (1979). At all relevant times, Defendants were

State employees as defined under Tennessee statutory law, because they were officials "employed in the service of and whose compensation is payable by the [S]tate." Tenn. Code Ann. § 8-42-101(3)(A). Tennessee has not waived its immunity. *See Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). Accordingly, Plaintiff's claim for money damages against Defendants in their official capacities is barred by the Eleventh Amendment.[3] *See id*.

### B. Individual-Capacity Claims

Defendants claim the defense of qualified immunity as to the claims against them in their individual capacities. Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly-established;" and (3) whether the official's actions were objectively unreasonable. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).

For a right to be clearly-established, "at the time of the officer's conduct, the law [must have been] sufficiently clear such that 'every reasonable official would understand what he is doing is unlawful.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense by showing both "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time

---

[3] An exception to sovereign immunity exists in cases of prospective injunctive relief. *See, e.g., Ex Parte Young*, 209 U.S. 123 (1908). Therefore, Plaintiff's claims for prospective injunctive relief are not barred by sovereign immunity. Because the Court finds that none of Plaintiff's claims survive, however, this exception is immaterial in this case.

of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.' *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (citing *Ashcroft*, 563 U.S. at 741). In short, it is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### 1. Excessive Force

Plaintiff's claim that he was sexually assaulted by prison guards in an act of excessive force implicates the Eighth Amendment's prohibition against cruel and unusual punishment. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). In determining whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry that is made up of subjective and objective components: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e. the subjective component; and (2) whether the conduct, in context, is sufficient serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

The subjective prong requires consideration of the need for the use of force, the relationship between that need and the force used, the threat reasonably perceived by the official, and the extent of the injury. *Hudson*, 503 U.S. at 7. To satisfy the objective component, an inmate need not prove a serious injury to prove cruel and unusual treatment, but the extent of the injury may be probative of whether the force was plausibly "thought necessary" in the situation. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). However, "not every malevolent touch by a prison guard" creates a federal claim, and *de minimis* uses of physical force that are not repugnant to the conscience of mankind do not violate the Eighth Amendment. *Id.* (quoting *Hudson*, 503 U.S. at 9). In fact, the good faith use of physical force in pursuit of a valid penological objective will rarely, if ever,

7

violate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

The evidence in this case demonstrates that the only physical contact Defendants had with Plaintiff was to restrain him after the package of drugs fell from his buttocks [Doc. 37-2 ¶ 10]. There is no competent summary judgment evidence supporting the application of force in searching Plaintiff, much less excessive force [Doc. 37-2 ¶ 13-14; Doc. 37-3 ¶ 12-13; Doc. 37-4 ¶ 18, 20]. In fact, even in his report to the sexual assault nurse, Plaintiff did not allege that he had been penetrated [Doc. 37-1 p. 12, 14].

However, even if Defendants had used force to extract drugs from Plaintiff's rectum, which objectively did not result in an injury, it would have been in furtherance of a legitimate penological interest – recovering illegal drugs from a State inmate's person. *See Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1517 (2012) (detecting and deterring possession of contraband is legitimate penological objective). Plaintiff conceded in his report of the incident that the purpose of the alleged assault was to recover drugs, not for some punitive or salacious purpose [Doc. 37-1 p. 12-13]. Therefore, the Court finds that the competent summary judgment evidence contradicts Plaintiff's assertions, and that he has not demonstrated a constitutional violation. Moreover, even if the Court were to assume a constitutional violation on the facts alleged, Plaintiff has failed to demonstrate that all reasonable officers would have recognized that a body cavity search of Plaintiff, who was in a "hot cell," was a violation of his clearly established constitutional rights. *See, e.g., Spears v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) (finding non-routine searches, such as cavity searches, require reasonable suspicion). Therefore, the Court finds that Defendants are entitled to qualified immunity.

### 2. Medical Care

Plaintiff also alleges that he was denied the right to report his alleged sexual assault via the PREA protocol, and was, therefore, denied the medical care that could have proved that his rectum was penetrated [Doc. 1 p. 7].

The alleged denial of adequate medical care to a prisoner implicates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

To satisfy the objective component, a plaintiff must show a sufficiently serious medical need that, if care were denied, it would result in unnecessary or wanton infliction of pain or pose a substantial risk of serious harm. *See Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Where treatment has been provided, and the allegation is that the medical treatment was inadequate, a plaintiff must show "care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citation and internal quotation marks omitted).

In order to meet the subjective requirement, an inmate must show more than negligence in failing to render adequate medical care. *See, e.g., Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Rather, deliberate indifference is demonstrated only where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts

from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). The Sixth Circuit has held that "there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have *consciously* expos[ed] the patient to an *excessive* risk of *serious* harm." *Rhinehart*, 894 F.3d at 738-39 (citation and internal quotation marks omitted).

Here, the submitted evidence establishes that Plaintiff was not prohibited from making a PREA complaint. In fact, it demonstrates that Plaintiff made a PREA complaint, that the complaint was investigated, and that Plaintiff received a sexual assault examination within hours of the alleged incident [Doc. 37-4 ¶ 25; Doc. 37-1; Doc. 37-5 ¶ 9-14]. The nurse found no signs of injury or trauma to Plaintiff's body after the alleged assault [Doc. 37-5 ¶ 12; Doc. 37-1 p. 11]. Accordingly, Plaintiff's allegation that he was denied PREA reporting and/or medical care is wholly contradicted by the evidence presented, and Defendants are entitled to summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [Doc. 36] will be **GRANTED**, and this action will be **DISMISSED**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER**.

**ENTER:**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**